## PHILIP B. CHASE, Administrator, *v.* THE AMERICAN STEAMBOAT COMPANY.

Before the adoption of the constitution, the state of Rhode Island had jurisdiction over the waters of Narragansett Bay, and over the coasts of the sea to the extent of a marine league. The colony and state have always asserted a jurisdiction over the Bay, the process of the state courts has always been served on it, and generally, the state has always regulated all matters on the Bay.

Admiralty jurisdiction in colonial times defined.

At the time of the Revolution the English common law courts had, at least, jurisdiction concurrent with the admiralty jurisdiction, over marine torts committed in bays and arms of the sea.

The meaning of the word " *exclusive* " in the Act of Congress of 1789, C.20, defined.

The constitution of the United States conferred on the United States courts the admiralty jurisdiction as it then existed in the jurisprudence of the common law, exclusive where it was before exclusive, and concurrent where it was before concurrent.

In a suit by an administrator brought under a statute of the state (Rev. Stat. chap. 176, §§ 16 and 21) to recover for the loss of life of his intestate, caused by being run over by defendant's steamboat in Narragansett Bay, where the defendant contended that the jurisdiction of the state court depended entirely on the saving clause in the Act of Congress, 1789, chap. 20, § 9, saving to suitors a common law remedy, and that this, being a right of action given by statute, and not existing at common law, was not within that saving clause, it was *held,* that the intention of the saving clause was, to have a remedy or

right of action in those courts which proceed according to the course of the common law as distinguished from admiralty proceedings, and that the action was maintainable in the state courts.

The cases of *The Hine* v. *Trevor*, 4 Wal. 555; and the *Moses Taylor*. Ib. 411, stated and distinguished.

ACTION of the case, brought under the provisions of sections 16 and 21 of chapter 176 of the Revised Statutes, by the plaintiff as administrator of the estate of George Cook, late of Portsmouth, to recover $50,000 damages, for the benefit of the widow and children of his intestate, for causing the death of said intestate on the 29th of June, 1869, by a collision caused by the negligent and careless management of the defendant's steamer Whatcheer on the waters of Narragansett Bay, the same being a public highway.

At the trial of the case at the present term of the court for this county, before Mr. Justice Potter and a jury, the action was dismissed on motion of · the defendants for want of jurisdiction, whereupon the plaintiff filed a motion for a new trial, which was subsequently argued by agreement in Providence county, as of the present term in Newport county.

*Sheffield for plaintiff* :—

The dismissal was based upon section 9 of the Act of Congress of 1789, commonly called the Judiciary Act, which provides that the district courts " shall also have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, including all seizures under laws of import, navigation or trade of the United States, where the seizures are made on waters which are navigable from the sea by vessels of ten or more tons burthen within their respective districts, as well as upon the high seas, saving to suitors in all cases, the right of a common law remedy when the common law is competent to give it." Stat. at Large, vol. 1, p. 77. The constitution of the United States is a plan of government founded in the common law, and for an exposition of its terms and principles, reference must be had to the common law. Equity and admiralty jurisdictions are recognized. These existed under the common law. But like all exceptional jurisdictions, when they are attempted

to be set up, the *onus* is on the party setting them up. By the 16th section of the Judiciary Act, the equity powers begin where the common law powers end. So by the 9th section of the same act, properly construed, is it with an exclusive admiralty jurisdiction. The case at bar involves the mere municipal law of the state, and not the law of nations, or any law which is administered by a court of admiralty. The common law remedy provided in this case is unknown in the admiralty. Whenever the rights of the parties are to be governed by the municipal law, and not by the law of nations, it would seem to follow as a matter of course, that common law courts have jurisdiction of the cause. *Hallett* v. *Novion*, 14 Johns. 289, also *Percival* v. *Hickey*, 18 Johns. 257. The common law charges the liability and gives the remedy ; the statute in this case only says who shall sue.

The first clause of the section in the Judiciary Act under which this question arises, provides that the district courts shall have, exclusive of the courts of the several states, cognizance of all crimes and offences that shall be cognizable under the authority of the United States committed within their respective districts. The 8th section of the statute, and the first clause from the 9th section, received a construction in the courts of the United States which reflects light upon the subsequent clauses of the 9th section. *United States* v. *Bevans*, 3 Wheat. 336, 386 ; *Same* v. *Grush*, 5 Mason, 290 ; *The Merino, the Constitution and the Louisa,* 9 Wheat. 402. The particular clause of the statute we are considering, provides that there must be a *seizure*, that is, a proceeding *in rem.*, to give the district court exclusive jurisdiction. *The Moses Taylor*, 4 Wal. 411 ; *the Hine* v. *Trevor*, 4 Wal. 555 ; *New Jersey Steam Navigation Co.* v. *Merchants Bank*, 6 How. 344 ; *Marshall* v. *Baltimore and Ohio Railroad Co.* 17 How. 349. The statute means that the state courts should not use the admiralty process, the process *in rem.*, but that these courts, in matters affecting the subjects of admiralty jurisdiction, should be confined to the use of common law remedies. The exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, is understood to be exclusive as between the district and circuit courts, and that the jurisdic-

tion may be concurrent with courts of common law, in cases in which a common law remedy may be adequate and proper, inasmuch as the judiciary act of 1789, section 9, on this very point, saves to suitors in all cases the right of a common law remedy, when the common law is competent to give it. Kent's Com. vol. 1, p. 304, note 6. If the jurisdiction of the common law is concurrent as in England, either trespass or case lies for marine torts, even in the collision of vessels. 1 Chit. Pl. 145; *Lloyd* v. *Needham*, 11 Price, 608; *Chaplin* v. *Hawes*, 3 Car. & P. 554. In the case at bar the state statute creates no maritime lien. So the statute can give no jurisdiction to the district court, which administers the general maritime law. The remedy is here or nowhere. This raises the inquiry : What is the common law affecting this subject? It was enacted in England as early as A. D. 1389, (13th of Richard II.) that the admiralty must " not meddle henceforth of anything done within the realm, but only of a thing done upon the sea as it hath been used in the time of the noble Prince King Edward, grandfather of our Lord the King." 1 Eng. Stat. at Large, Chap. 5, p. 385, In 1391, (15th Richard II.) " It is declared, ordained and established, that of all manner of contracts, pleas and quarrels, and all other things rising within the bodies of counties, as well by land as by water, the admiral's court shall have no manner of cognizance, power nor jurisdiction, but all such things rising within the bodies of the counties, as well by land as by water, shall be tried, determined and remedied by the laws of the land, and not before the Admiral nor his Lieutenant in any wise." 1 Eng. Stat. at Large, Chap. 3, p. 400. Thus early, by acts of Parliament, was the dividing line between these two jurisdictions settled in England. A distinction which has been modified in this country by permitting the admiralty to administer concurrent jurisdiction in a certain class of cases ; but the general scope and range of the common law jurisdiction has been preserved. " No principle appears to be better settled in England than that the court of admiralty has not jurisdiction over *torts*, whether to persons or property, unless committed on the high seas and out of the limits of a county."

3 Bl. Com. 106; 4 Ins. 104; Doug. 13; 2 East. Crown Law, 803; *The Anna*, 5 Rob. Ad. Rep. 345; *The Henrick and Maria*, 4 Rob. 60; *The Ruckers*, Ibid. 73; 2 Br. Civ. and Ad. Law, 110, 204; *Velthasen* v. *Ormsley*, 3 Term, 315; 6 Dawes Ab. 341.

The admiralty jurisdiction has two leading characteristics— to wit. : 1. Trial without jury. Story Com. on Con. § 1763, n. Fed. No. 83. 2. Proceedings *in rem. The Moses Taylor*, 4 Wal. 427. The judicial power of the United States is manifestly exclusive in some cases; while in others it may be made so at the election of Congress. *The Moses Taylor*, 4 Wal. 429. The jurisdiction here sought to be established is within the exception which saves to suitors a common law remedy where the common law is competent to give it, if, indeed, it could by possibility be considered as embraced within the enacting clause of this provision.

I. The case is not one of admiralty jurisdiction, because the admiralty gives no remedy to the administrator or the widow and children in such cases.

II. The remedy proposed by the statute being an action of the case, is a common law remedy. There is a distinction between the right to redress for an injury, and the process by which that right is to be enforced. The one is the right of action; the other, the remedy to enforce that right. The effect of the statute is to provide that a common law right of action should survive to an administrator, preserving the common law form of action, thus giving the common law remedy. If this statute provided that this right of action should be enforced by the process usually known as *in rem.* against the defendants' steamboat, then the subject would be brought within the prohibitions of section 9 of the judiciary act. But the statute is otherwise. *The Moses Taylor*, 4 Wal. 427, 431; *The Hine* v. *Trevor*, 4 Wal. 571. But courts of admiralty have no jurisdiction to try common law actions of the case. A maritime lien is the foundation of admiralty jurisdiction. The federal jurisdiction is a special jurisdiction, while the jurisdiction of the states is the general jurisdiction. The state, therefore, has the right to enact all laws not inhibited by the constitution of the United States.

It is nowhere denied to the state that it shall protect its own citizens against the negligence of those who are in the highways of the state, so long as the redress which the state gives is a common law remedy. The state has the general jurisdiction of the waters of Narragansett Bay. The action accrued to Cook, for he lived a short time after he was injured. The statute provides that the common law remedy shall survive. And the question before the court is, was the legislature competent to enact that statute? The following authorities bear upon the general questions involved : 1 Conklin's Adm. Practice, p. 23 ; Story's Com. on Con. § 1666, n. 3; *The Hine* v. *Trevor,* 4 Wal. 571; 2 Bro. Civ. and Adm. Law, 111 and 112 ; *Addison* v. *Overend,* 6 Term, 766; *The Public Opinion,* 2 Hagg. 398.

*Payne, B. F. Thurston and Gardner, for the defendant :—*

I. The state courts have no jurisdiction of this case, and the same was properly dismissed. 1. Because section 9 of the act of Congress of September 24, 1789, known as the judiciary act, vests exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction in the district courts of the United States, saving to suitors in all cases the right of a common law remedy, where the common law is competent to give it ; which jurisdiction includes all cases of collision on the entire navigable waters of the United States, not covered by the act of Congress of February 26, 1845. *The Moses Taylor,* 4 Wal. 411 ; *The Hine* v. *Trevor,* 4 Wal. 555 ; *The Belfast,* 7 Wal. 624, and cases therein cited ; and the plaintiff's case does not come within the saving clause of said 9th section. Cases cited above. Sherman & Redfield on Negligence, page 332, and cases cited in note ; *Robinson* v. *Campbell,* 3 Wheat. 212 ; *New Jersey Steam Navigation Co.* v. *Merchants Bank,* 6 How. 344. As to the class of subjects cognizable in the admiralty, see Parsons on Maritime Law, vol. 2, p. 507–8, and note. Benedict's Admiralty, §§ 308, 309 and 312.

II. The motion to dismiss was a proper motion, made at the proper stage of the cause. Gould's Pleadings, Chap. 5, § 25 ; *Rea* v. *Hayden,* 3 Mass. 24 ; *Lawrence* v. *Smith,* 5 Mass. 362 ; *Elder* v. *Dwight Manf'g Co.* 4 Gray, 201, and cases there cited.

POTTER, J. Action of the case brought by the plaintiff as administrator of the estate of George Cook, deceased, to recover $50,000 damages for the benefit of the wife and children of the intestate, for causing the death of the intestate on the waters of Narragansett Bay, by a collision. The action was dismissed on motion of the defendants, on the ground that the state court had no jurisdiction, and the question now comes before this court on a motion for new trial, on the ground of alleged erroneous ruling.

The declaration contained two counts, one under section 16 of chapter 176 of the Revised Statutes, which provides that if the life of any person crossing upon a public highway with reasonable care shall be lost, by reason of the negligence or carelessness of such common carrier, (by stage-coach, railroad, or steamboat,) or by the unfitness, or negligence, or carelessness of their servants, the common carriers or proprietors shall be liable for damages for the injury caused by such loss of life, to be recovered in an action of the case for the benefit of the husband or widow or next of kin; such action for the benefit of the widow or next of kin to be brought by the administrator.

The second is on section 21 of chapter 176: "In all cases in which the death of any person ensues from injury inflicted by the wrongful act of another, and in which an action for damages might have been maintained at the common law, had not death ensued, the person inflicting such injury shall be liable to an action for damages for the injury caused by the death of such person, to be recovered by action of the case for the use of his or her husband, widow, children, or next of kin, in like manner and with like effect as in the preceding five sections provided."

The plea is the general issue.

The questions involved are, first, whether the United States courts, by the United States Constitution, have exclusive jurisdiction in a case like this, resulting from a collision of vessels in the bay, or whether the state courts have concurrent jurisdiction; and, second, whether, if the state courts would have jurisdiction in a case of ordinary injury, they would have it in a

case like the present, where the remedy is given by statute and was unknown to the old common law.

*Origin of the Acts.*—The consideration of the first of these questions is necessary to throw light upon, and aid in, the determination of the second.

Before the adoption of the constitution, the state had jurisdiction over the bay and over the coasts of the sea to the extent of the marine league; Lawrence's Wheaton, 321, 933 ; 6 Dane's Abr. 359, &c. ; 3 Hag. Ad. 290, 375 ; *De Lovio* v. *Boit,* 2 Gallis. 398 ; see 425 ; see opinion of Mr. Justice Johnson in *Ramsay* v. *Allegre,* 12 Wheat. 614. This jurisdiction was exercised by its courts of common law. The vice admiralty court exercised an occasional jurisdiction in cases of prize and violations of the British revenue laws. However it may have been in other colonies, here the power of the vice-admiralty court was but little regarded. The colony legislature regulated the fees of the admiralty, and imposed penalties on its officers for violating it; and by act of 1746 the superior court of the colony was empowered to issue prohibitions to the admiralty courts.

Dane, a good authority on old New England laws and usages, observing that most of the statutes, &c., were intended merely to regulate the plantation trade, the laws of which the colonies were continually violating, goes on to say that at the date of the Massachusetts charter, 1691, the admiralty jurisdiction was " exclusive on the high seas, the common highway of nations, without the territorial line, usually a cannon-shot from the shores ; concurrent with the common law on the coasts between the shore and that line, and without the bodies of counties ; and within them, only such admiralty limited jurisdiction the said prior statutes gave, and that was the colonial view of the subject," and after the act of 7 & 8 William III. ch. 22, to prevent frauds in trade, " the admiralty geographical sphere remained as before." Some have supposed the members of the convention who formed the United States Constitution had in view this extended admiralty jurisdiction when they provided that the judicial power should extend to " all cases of admiralty and marine jurisdiction." This is not probable, because this

extended jurisdiction was deemed by the colonies unconstitutional.  .  .  .  .  "The king's commission to the governor of New Hampshire seems to have extended to all crimes and suspected offences and contracts, even to fresh waters and arms of rivers, &c.  The colonies never admitted an admiralty jurisdiction to be legal to this extent."  6 Dane's Abr. 357, 358.

In the address of the delegates in Congress in October, 1774, one of the complaints is, that the English stamp act had extended the admiralty jurisdiction "to matters arising *within the body of a county*," and authorized penalties by forfeitures to be recovered in that court.  Journal, 47.  And among the resolutions of Congress, October, 1774, is one that "the respective colonies are entitled to the common law of England," &c.  Ibid. 29.  And in July, 1775, (Ibid. 190,) they renew their complaint against the English government of "enlarging the jurisdiction of the courts of admiralty and vice admiralty."  And see Ibid. 144, &c., 152.

The colony and state have always asserted their jurisdiction over Narraganset Bay, and the process of the state courts has always been served on it.  By an act of the legislature, 1798, that part of the bay north of Field's Point was declared to be within the county of Providence, and southward of that point process of any county might be served.  ·

Of course all this jurisdiction remains in this state and its courts, which has not been granted to the general government by the United States Constitution.

And the state legislature has (as stated in the argument of Mr. Sheffield) at various times regulated the fisheries in the bay, the speed of steamboats, the sale of liquors, and prohibited the pollution of its waters.

When the United States Constitution provides that the judicial power of the Union shall extend to all causes of admiralty and maritime jurisdiction, is this grant of power to be interpreted by the state of the admiralty jurisdiction as it was anciently claimed by the admiralty in England, or by the actual state of the jurisdiction in England at the date of our Revolution, or by the extent of that jurisdiction as it was practiced in the colonies?

Chase, administrator, *v.* The American Steamboat Company.

It is not necessary for the purposes of this case to go into the history of the controversy in England between the courts of common law and admiralty, which has been so fully gone into in the case of *De Lovio* v. *Boit*, 2 Gallis., 398, and in several cases before the United States Supreme Court.

So far as maritime torts are concerned, within which class the present case comes, it is admitted that the jurisdiction of the admiralty depends on the place.

So far as concerned the high seas, which were distinguished in the old English law from the narrow seas so called, and bays and arms of the sea, the jurisdiction was undisputed. But as to such parts of the arms of the sea as were within the jurisdiction of the counties, the courts of common law resisted the jurisdiction of the admiralty, and for a time at least entirely excluded them.

Dane says, (6 Abr. 356,) " According to 13 Rich. II. ch. 5, the bodies of counties includes all lands and waters within the realm of England ; and the sea includes all waters without the realm ; and . . . . the realm include the narrow seas and the coast." And see Jacob's Law Dict. ; Bac. Abr. 1, (side p.) 623 ; 4 Inst. 134, 140 ; Comyn, Admiralty, E. 14 and F. 2 ; Judge Story, in *United States* v. *Grush*, 5 Mason, 300.

It is enough for the present case to state what is generally admitted, that at the time of our Revolution the common law courts had at least a concurrent jurisdiction in England with the admiralty, over marine torts committed in bays and arms of the sea.

What then is the effect of the Act of 1789 ? The language is, the district court shall " have *exclusive original* cognizance of all civil causes of admiralty and maritime jurisdiction ;" " saving to suitors in all cases the right of a common law remedy, when the common law is competent to give it."

Is the word exclusive here used in reference to the state courts, or to the other·United States courts ? If the question were a new question, it might be reasonably argued that the words in their connection, *exclusive original*, mean that the original jurisdiction in such cases is in the district, exclusive of the circuit

court. And such is Chancellor Kent's opinion. Kent Com. 1, (side p.) 304, note.

In several places in the act, where it is intended to exclude the state courts, the words " exclusive of the state courts," are carefully used. Seizures under the laws of trade, they being United States laws, would of course follow the jurisdiction of the United States courts.

But the Supreme Court of the United States have construed this word *exclusive* to refer to the state courts. It is important to consider that the jurisdiction of the state court depends on the Constitution and not on the Act of Congress; if Congress has not the power to give the United States courts exclusive jurisdiction, then this clause is entirely unnecessary; for the state courts would have the jurisdiction without it; and if the Constitution, either expressly or by implication, vests the exclusive jurisdiction in the United States courts, Congress could not give any portion of it to the state courts. And even if the word *exclusive* was used by Congress purposely to exclude the state courts, then the question arises, what does it mean to exclude? Does it only mean to exclude the state courts from exercising admiralty jurisdiction. or does it mean to exclude them from exercising any jurisdiction whatever over certain classes of cases? For example, if a policy of marine insurance is a maritime contract, is the state court therefore excluded from all jurisdiction over such a policy?

Salt water, where the tide ebbs and flows, may be within admiralty jurisdiction, and admiralty courts may therefore have jurisdiction over offences committed on it; but suppose two citizens of a state step out into shallow water and fight a duel, are they not punishable by the laws of the state? Chief Justice Marshall answers the question in the affirmative. *United States* v. *Bevans*, 3 Wheat., 336, 339. So *pari ratione* of an assault or other offence.

In the trial of Bruce before the admiralty court for murder in Milford Haven, the opinion of the twelve judges was taken as to the jurisdiction. The jurisdiction was sustained, but most if not all of the judges seemed to think the common law had a

concurrent jurisdiction.  2 Leach's Crown Cases, 1093, case 353, cited in *United States* v. *Bevan,* 6 Wheat., 372 note.  And Hale, (2 P. C. 12,) lays it down that the King's Bench had concurrent jurisdiction of felonies on the narrow seas, because, though out of the body of a county, they were within the realm.

So in cases of civil actions  for torts :  *e. g.* collision, if  on the high seas or in harbor, the admiralty court may have jurisdiction to give damages for it, on account of its taking place on tide water ;  but it is believed that the courts of common law have always exercised jurisdiction in these cases.   The cases which support the admiralty jurisdiction in  this  and other classes of cases, assert that jurisdiction in opposition to the common law decisions which excluded the admiralty, and do not undertake to assert an exclusive jurisdiction over that whole class of cases.

Suits for collision on the Thames were sustained at common law because held to be within the body of a county.    *Violet* v. *Blague,* Cro. Jac. 514.    And see 2 Hale, P. C. 16.    In fact, the admiralty jurisdiction was denied there.

The Supreme Court of the United States, in *New Jersey Steam Navigation Co.* v. *Merchants' Bank,* 6 How. 344, 390, say, " The common law courts exercise a concurrent jurisdiction in nearly all the cases of admiralty cognizance, whether of tort or of contract, with the exception of proceedings *in rem.*"

Judge Story, in his Commentaries on the Constitution, (edition of 1833,) vol. 3, § 1666, note, says, the admiralty jurisdiction " is exclusive in all matters of prize, for  the reason  that at the common law this jurisdiction is  vested in the courts of admi-ralty to  the  exclusion of  the  courts of  common law ;  but in cases where the  jurisdiction of the courts of common law and the admiralty are concurrent, (as in cases of possessory suits, mariners' wages, and *marine torts,*) there is nothing in the con-stitution necessarily leading to the conclusion that the jurisdic-tion was intended to be exclusive ;  and there is as little ground upon general reasoning to  contend for it.   The  reasonable in-terpretation of the constitution would seem to be, that it con-ferred on the national judiciary the admiralty and  maritime jurisdiction, exactly according to the  nature and  extent and

modifications in which it existed in the jurisprudence of the common law. Where the jurisdiction was exclusive, it remained so; where it was concurrent, it remained so. . . . . This latter class of cases can be no more deemed cases of admiralty and maritime jurisdiction than cases of common law jurisdiction." And Chancellor Kent holds to the same doctrine. See Kent's Com. 1, (side p.) 395, 400, citing the Federalist, No. 82, and Judge Washington's approval of it, in *Houston* v. *Moore*, 5 Wheat. 1. And in the oft cited case of *De Lovio* v. *Boit*, A. D. 1813, 2 Gallis. 398, 445, Judge Story, after excepting prize cases, says, that "in all others the common law has now acquired or claimed a concurrent jurisdiction." Judge Story was in that case asserting the concurrent—not exclusive—jurisdiction of the admiralty courts. And see pp. 422. 476, &c.

If because admiralty has *a* jurisdiction in these cases, the common law courts therefore have none, it would sweep into the federal courts a very large portion of the litigation of the seaboard states.

These considerations may seem not pertinent to the case on hand, but they are of importance in determining what is the meaning of the saving clause in the Act of 1789. The defendants contend that the jurisdiction of the state court depends on this clause, and on this alone; that it is confined to the common law remedies as they existed before the adoption of the United States Constitution; and that therefore the act giving an administrator the right to recover damages for injury to a family by a death caused by the wrongful act of another, being a new right of action and not existing at common law, is not within the saving clause, and therefore the state court has no jurisdiction.

If, as we have said, the jurisdiction of the state courts does not depend entirely on the act of Congress, then this clause would not affect the question of concurrent jurisdiction, except as showing the sense of Congress that the word *exclusive* was not intended to take it away, and should not be so construed.

We may well admit there are whole clases of cases where the federal courts have jurisdiction entirely exclusive of state courts, namely, cases of prize, seizures under the United States revenue

laws, and cases arising under United States statutes where the statute gives them the jurisdiction ; cases in which the United States Constitution expressly gives them jurisdiction, and other cases in which by implication their jurisdiction is exclusive or may be made so by Congress.

If, in any of the cases in which the state courts retain jurisdiction, there is danger of our foreign relations being affected, Congress may provide for their removal into the federal courts. See *McLeod's case*, Dec. Joint. Com. 314, 489, 836.

But even if the jurisdiction of the state courts does depend on this proviso, what is the meaning of it? Is it confined to common law remedies as they actually existed in 1789, and does it prevent the states from granting any new right or remedy to be pursued according to the course of the common law ?

The reasonable construction, as it seems to us, is that it intends to vest in the United States courts the *whole* jurisdiction the admiralty courts of England and the colonies exercised, or generally, the whole admiralty jurisdiction, (by whatever rule defined,) exclusive where it was exclusive and concurrent where it was concurrent, but that in these latter cases the courts of common law could not proceed by admiralty process ; in other words, that if the suitor chose to resort to an admiralty remedy he must do it in an admiralty court. Mr. Justice Miller, in the opinion of the United States Supreme Court in *The Hine* v. *Trevor*, 4 Wal. 555, and Mr. Justice Field, in *The Moses Taylor*, 4 Wal. 411, while holding that the admiralty jurisdiction was exclusive in the federal courts, place the ground of those decisions on the fact that the proceedings provided for in the state laws, which were declared void in those cases, were admiralty proceedings, were proceedings *in rem*. Mr. Justice Field observes that the remedy by the state law was in no sense a common law remedy. The vessel was made defendant without mentioning the owners, &c. And he well observes that it could not have been the intention of Congress to give the suitor *all* such remedies as might afterward be enacted by state statutes, for that would enable them to make the jurisdiction concurrent in all cases, and so defeat the exclusive jurisdiction of the fed-

eral courts. And Mr. Justice Miller observes, "It is not a remedy in the common law courts that is saved, but a common law remedy. A proceeding *in rem.* is not a common law remedy," &c. The objection here is, not that a new right was given, but that it was to be enforced by the process peculiar to the admiralty courts.

In *Waring* v. *Clarke*, 5 How. 441, 457, Mr. Justice Wayne, in delivering the opinion of the majority of the United States Supreme Court, and replying to the argument that the admiralty jurisdiction was confined to the cases in which it formerly existed in England, says that the construction would, in effect, take away from the courts the interpretation of the provision, and would prevent all future legislation on the subject, and therefore this limitation could not have been intended.

The argument seems to us to be equally strong, that Congress could not intend by this proviso to confine the remedy to the common law as it anciently existed, and to prevent the extension of a right or all alteration of process or form of remedy. If so, what would be the effect in New York, and those states which have, by their new codes, abolished all the old common law forms and remedies?

The intention, therefore, must be, giving the clause a liberal construction, to save the remedy or right of action in those courts which proceed according to the course of the common law as distinguished from the course of admiralty, and there is nothing in the opinions we have cited, against this construction.

Judge Nelson, in the United States Supreme Court, (*N. J. S. Nav. Co.* v. *Merchants Bank*, 6 How. 344, 390,) says, "The saving clause was inserted probably from abundant caution lest the exclusive terms in which the power is conferred on the district courts might be deemed to have taken away the concurrent remedy which had before existed. This leaves the concurrent power *where it stood at common law.*"

. And the United States Supreme Court, in *The Eagle*, 8 Wal. 15, in speaking of the saving clause in the additional Act of 1845, which saves "to the parties the right of a concurrent remedy at the common law where it is competent to give it, and

any concurrent remedy which may be given by the state laws," hold that this saving clause " is in effect the same as in the Act of 1789."

We have here the opinion of the whole court without dissent, giving a construction to the saving clause in the Act of 1789, agreeing with the construction we have given to it, and which we consider the most reasonable. *A new trial must therefore be granted.*